# EXHIBIT A

| | |
|---|---|
| **DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO**<br>1437 Bannock St.<br>Denver, CO 80202<br>_____ | DATE FILED: February 15, 2022 1:55 PM<br>FILING ID: 3FBC57D12FC29<br>CASE NUMBER: 2022CV30428 |

**Plaintiff:**   **STANLEY TOWNSEND & TAMARA TOWNSEND**

**v.**

**Defendants:**   **ORANGE POWER GROUP, LLC d/b/a DITCH WITCH OF THE ROCKIES; THE TORO COMPANY; THE HOME DEPOT, INC.; and HOME DEPOT U.S.A., INC.**
_____

*Attorneys for Plaintiff:*
Jason W. Jordan, Atty. No. 37263
Anne M. Dieruf, Atty. No. 36147
**JORDAN HERINGTON & ROWLEY**
5445 DTC Parkway, Suite 1000
Greenwood Village, CO 80111
Phone: (303) 766-8153
Fax: (303) 766-5568
jason@jordanlaw.com
anne@jordanlaw.com

Jonathan M. Ward, Atty. No. 32168
Dan Yarbro, Atty. No. 50949
**THE LAW OFFICES OF JONATHAN M. WARD**
1825 York Street,
Denver, CO 80206
Tel: (303) 399-3800
Fax: (303) 595-5361
jward@accidentattorneydenver.com
dyarbro@accidentattorneydenver.com

▲ **COURT USE ONLY** ▲
_____

**Case Number:**

**Division:**

## COMPLAINT AND JURY DEMAND

Plaintiffs Stanley and Tamara Townsend, by and through their attorneys, **JORDAN HERINGTON & ROWLEY** and **THE LAW OFFICES OF JONATHAN M. WARD**, for their Complaint and Jury Demand against Defendants Orange Power Group LLC d/b/a Ditch Witch of the Rockies,

# EXHIBIT A

The Toro Company, The Home Depot, Inc., and Home Depot U.S.A., Inc., state and allege as follows:

## INTRODUCTION

1.      This is an action for product liability, sounding in strict liability and negligence, which arises out of defects in a Ditch Witch C24X Trencher believed to bear serial number DWPC24XACK0001796, which seriously injured Plaintiff Stanley Townsend on or about May 19, 2020 (hereinafter "Subject Trencher").

2.      As a result of the Defendants' defective product and their negligent acts and omissions, Stanley Townsend endured and continues to endure significant pain and has suffered permanent impairment, disfigurement, economic damages and losses, and noneconomic damages and losses as set forth herein.

3.      As a result of Defendants' defective product and their negligent acts and omissions, Tamara Townsend has sustained loss of consortium damages, including both economic damages and losses, and noneconomic damages and losses as set forth herein.

## PARTIES

4.      At all relevant times, Plaintiffs Stanley and Tamara Townsend were and are residents of the State of Colorado.

5.      At all relevant times, Defendant Orange Power Group, LLC d/b/a Ditch Witch of the Rockies (hereinafter "Ditch Witch"), was and is an Oklahoma limited liability company that maintains its principal place of business in Colorado, at 7160 Eudora Drive, Commerce City, CO 80022.  Defendant Ditch Witch does business in the State of Colorado, is a resident of the State of Colorado for purposes of personal jurisdiction and is subject to the jurisdiction and venue of this Court. Ditch Witch is authorized to do business and is doing business in the State of Colorado and maintains a registered agent for service in Colorado: C T Corporation System, 7700 E. Arapahoe Rd, Ste 220, Centennial, CO 80112-1268.

6.      At all relevant times, Defendant The Toro Company (hereinafter "Toro") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Minnesota, at 8111 Lyndale Avenue South, Bloomington, MN 55420-

# EXHIBIT A

1196.  Defendant Toro does business in the State of Colorado, is a resident of the State of Colorado for purposes of personal jurisdiction and is subject to the jurisdiction and venue of this Court. Toro is authorized to do business and is doing business in the State of Colorado and maintains a registered agent for service in Colorado: United Agent Group Inc., 155 E. Boardwalk #490, Fort Collins, CO 80525.

7.      Upon information and belief Defendants Ditch Witch and Toro designed, engineered, developed, tested or failed to test, approved, manufactured, fabricated, assembled, equipped, inspected or failed to inspect, labeled, advertised, promoted, marketed, distributed, wholesaled, supplied, sold, provided, serviced, repaired, and/or maintained trenching equipment, including the Subject Trencher.

8.      At all relevant times, Defendant The Home Depot, Inc. was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Georgia, at 2455 Paces Ferry Road, Atlanta, GA 30339.  Defendant The Home Depot, Inc. does business in the State of Colorado, is a resident of the State of Colorado for purposes of personal jurisdiction, and is subject to the jurisdiction and venue of this Court.

9.      At all relevant times, Defendant Home Depot U.S.A., Inc. was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Georgia, at 2455 Paces Ferry Road, Atlanta, GA 30339. It is believed that Defendant Home Depot U.S.A., Inc. is a wholly owned subsidiary of Defendant The Home Depot, Inc. It is further believed that The Home Depot, Inc. conducts business in Colorado by and though its subsidiary Home Depot U.S.A., Inc.  Defendant Home Depot U.S.A., Inc. does business in the State of Colorado, is a resident of the State of Colorado for purposes of personal jurisdiction and is subject to the jurisdiction and venue of this Court. Home Depot U.S.A., Inc. is authorized to do business and is doing business in the State of Colorado and maintains a registered agent for service in Colorado: Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120.

10.     Defendants The Home Depot, Inc. and Home Depot U.S.A., Inc. will hereinafter be collectively referred to as "Home Depot."

11.     Defendants Home Depot tested or failed to test, approved, fabricated, assembled, equipped, inspected or failed to inspect, labeled, advertised, promoted, marketed, distributed, wholesaled, supplied, sold, provided, rented, serviced, repaired and/or maintained trenching equipment, including the Subject Trencher.

# EXHIBIT A

12.     Upon information and belief, at all times relevant hereto, each and every one of the Defendants was the agent, co-conspirator, servant, employee, partner, joint venturer, alter ego, affiliate, successor in interest, and/or franchisee of each of the other Defendants, and each was at all times acting in concert with each other, within the course, scope, and authority of such agency, service, partnership, employment, joint venture, conspiracy, affiliation and/or franchise.  All of said acts, as set forth herein, were subsequently performed with the knowledge, acquiescence, ratification, and consent of the respective principals, and the benefits thereof accepted by said principals.

## JURISDICTION

13.     Pursuant to C.R.S. § 13-1-124(1)(a) and (b), this Court has personal jurisdiction over this matter, and jurisdiction is proper.

14.     Pursuant to Art. 6 § 9 of the Constitution of the State of Colorado, this Court has subject matter jurisdiction over this action because it involves a civil matter. The amount in controversy exceeds $25,000.00.

15.     At all relevant times, general jurisdiction existed and exists over Ditch Witch, as Defendant Ditch Witch maintains its principle place of business in the State of Colorado.

16.     At all relevant times, specific personal jurisdiction existed and exists over Defendant Toro.  The following facts support specific personal jurisdiction in this matter:

a)      Defendant Toro is a multi-national corporation that operates worldwide, often through various subsidiaries, including American subsidiaries. Upon information and belief, many hundreds of identical and/or similar Toro products are knowingly and intentionally sold and/or used throughout the State of Colorado, and Toro make resulting profits

b)      Toro, itself and through its affiliated corporations, distributors, agents, representatives, and/or employees, was engaged in the business of designing, developing, manufacturing, testing, engineering, specifying, assembling, approving, marketing, promoting, advertising, distributing, and/or selling trenching and other equipment to the consuming public in the State of Colorado.  This includes the Subject Trencher, other trenchers, and other related Toro products sold

# EXHIBIT A

and/or provided through Toro, its distributors, sales representatives, agents, and/or employees in the State of Colorado.

c) Toro specifically advertised its products on a continuous basis in Colorado. Upon information and belief, it delivered brochures and other advertising materials to Colorado distributor(s) of its products and/or rental entities that rent its products to the Colorado public.

d) Toro has a regular plan for distribution of products within the United States, including in Colorado, with the goal of achieving a commercial benefit from the sale of those products in Colorado.

e) Toro maintains a presence in Colorado, including but not limited to at least one dealer (Colorado resident Ditch Witch), sales personnel, and/or other agents in Colorado.

f) Toro places products into the Colorado stream of commerce by targeting Colorado through its local dealer(s) in the State of Colorado.

g) Toro, in conjunction with its distributors, sales representatives, agents, and/or employees, established channels for providing regular advice, products, service, and product information to Colorado consumers, such as Stanley Townsend.

h) Toro's website directs Colorado consumers to its in-state distributor, Ditch Witch, where Toro products are available to Colorado residents.

i) At all relevant times, Toro served the Colorado market and expected its products, including the Subject Trencher, to be sold, rented, and/or used in Colorado.

j) Upon information and belief, Toro directed, shipped, and/or delivered the Subject Trencher to the State of Colorado.  This may have been done through a Toro distributor, sales representative, agent, and/or employee.

k) Defendant Toro's conduct with regard to its trenching and other heavy equipment was specifically directed at Colorado consumers in the State of Colorado, resulting in significant economic benefits for Defendant Toro.

l) Plaintiffs' claims are connected with and/or related to Toro's contacts with Colorado.

m) There is little or no burden on Toro in litigating this case in a Colorado court.

# EXHIBIT A

n)   Defendant Toro has purposefully availed itself of the benefits of doing business in Colorado, both directly and through agents, franchisees, subsidiaries and/or corporate divisions, by marketing and selling its products, including the Subject Trencher, in the State of Colorado.

o)   Plaintiffs' claims arise out of, are connected with, and/or relate to Toro's contacts with Colorado because the Subject Trencher was sold, rented, and used in Colorado, the Subject Incident and resulting injuries occurred in Colorado, and because other identical and substantially similar products are sold and used throughout Colorado.

17.   At all relevant times, specific personal jurisdiction existed and exists over Defendant Home Depot. The following facts support specific personal jurisdiction in this matter:

a)   Home Depot is a multi-national corporation that operates worldwide, often through various subsidiaries, including American subsidiaries. Upon information and belief, many hundreds of identical and/or similar Home Depot products are knowingly and intentionally sold, rented, and/or used throughout the State of Colorado, and Home Depot make resulting profits

b)   Home Depot, itself and through its affiliated corporations, distributors, agents, representatives, and/or employees, was engaged in the business of testing, approving, fabricating, assembling, equipping, inspection, labeling, advertising, promoting, marketing, distributing, wholesaling, supplying, selling, providing, renting, servicing, repairing, and/or maintaining trenching and other equipment for sale or rent to the consuming public in the State of Colorado.  This includes the Subject Trencher, other trenchers, and other related Home Depot products sold, rented, and/or provided through Home Depot, its distributors, sales representatives, agents, and/or employees throughout the State of Colorado.

c)   Home Depot specifically advertised its products for sale and rent on a continuous basis in Colorado. Upon information and belief, it conducted extensive advertising in the State of Colorado.

d)   Home Depot has a regular plan for distribution of products within the United States, including in Colorado, with the goal of achieving a commercial benefit from the sale and/or rent of those products in Colorado.

# EXHIBIT A

e)      Home Depot maintains a presence in Colorado, including but not limited to numerous retail sales and rental locations, sales personnel, and/or other agents in Colorado.

f)      Home Depot places products into the Colorado stream of commerce by targeting Colorado through its numerous retail sales and rental locations in the State of Colorado.

g)      Home Depot, in conjunction with its distributors, sales representatives, agents, and/or employees, established channels for providing regular advice, products, service, and product information to Colorado consumers, such as Stanley Townsend.

h)      Home Depot's website directs Colorado consumers to its numerous Colorado retail sales and rental locations, where its products are available for sale and rent to Colorado residents.

i)      At all relevant times, Home Depot served the Colorado market and expected its products, including the Subject Trencher, to be sold, rented, and/or used in Colorado.

j)      Defendant Home Depot's conduct with regard to its trenching and other heavy equipment for rent and/or sale was specifically directed at Colorado consumers in the State of Colorado, resulting in significant economic benefits for Home Depot.

k)      Plaintiffs' claims are connected with and/or related to Home Depot's contacts with Colorado.

l)      There is little or no burden on Home Depot in litigating this case in a Colorado court.

m)      Defendant Home Depot has purposefully availed itself of the benefits of doing business in Colorado, both directly and through agents, franchisees, subsidiaries and/or corporate divisions, by marketing, selling, and renting products, including the Subject Trencher, in the State of Colorado.

n)      Plaintiffs' claims arise out of, are connected with, and/or relate to Home Depot's contacts with Colorado because the Subject Trencher was sold and/or rented by Home Depot in Colorado, used in Colorado, the Subject Incident and resulting

# EXHIBIT A

injuries occurred in Colorado, and because other identical and substantially similar Home Depot products are sold, rented, and used throughout Colorado.

## GENERAL ALLEGATIONS

18.     Plaintiffs incorporate all allegations made elsewhere in this Complaint as if set forth verbatim herein.

19.     On May 19, 2020, Plaintiff Stanley Townsend rented the Subject Trencher from a Home Depot retail location in Arapahoe County; Store 1523 Pioneer Hills, located at 5600 South Chambers Road, Aurora, CO 80015.

20.     That same day, Home Depot provided Stanley Townsend with forms and paperwork authored by Home Depot, including but not limited to a Large Equipment Rental Check-in/Check-out Form that provided for various pre-rental equipment checks by Home Depot.

21.     Home Depot failed to complete said form or perform its own pre-rental equipment checks in relation to the Subject Trencher.

22.     Home Depot failed to offer or provide Stanley Townsend with a manual for the Subject Trencher.

23.     That same day, as part of his work duties, Plaintiff Stanley Townsend was operating the Subject Trencher, in conformance with all safety protocols and warnings, at or about a residence located at 3172 S. Hannibal Street, Aurora, CO 80013 in Arapahoe County (hereinafter referred to as the "Incident Site").

24.     Shortly after beginning his trenching work at the Incident Site, the Subject Trencher contacted something in the terrain.  In response, Mr. Townsend released the digging chain control to stop the Subject Trencher's chain from turning.  When the chain did not turn off as intended and as designed, Mr. Townsend was forced to get out of the way of the defective Trencher, which caught his pant leg and pulled his right leg into the still-rotating digging chain.

25.     Upon information and belief, Home Depot had previously experienced problems or issues with the Subject Trencher.  In spite of said prior knowledge of defects in the Subject Trencher, Home Depot nonetheless rented it to Mr. Townsend and others, thereby putting him and others in harm's way.

# EXHIBIT A

26.     As a direct and proximate result of the defects in the Subject Trencher and Defendants' negligent acts and omissions, Plaintiff Stanley Townsend sustained significant and permanent injury to his right leg and Plaintiffs suffered resulting damages.

27.     Plaintiff Stanley Townsend acted reasonably under the circumstances, was not comparatively at fault, and mitigated his damages.

## FIRST CLAIM FOR RELIEF

### (*Strict Liability – All Defendants*)

28.     Plaintiffs incorporate herein all allegations made elsewhere in this Complaint as if set forth verbatim herein.

29.     Defendants Ditch Witch and Toro are manufacturers as defined in Colo. Rev. Stat. Ann. § 13-21-401, responsible for the design, assembly, fabrication, production, construction, preparation, and sale of the Subject Trencher.  At all relevant times, Ditch Witch and Toro were in the business of designing, engineering, developing, testing, approving, manufacturing, fabricating, assembling, equipping, inspecting, labeling, advertising, promoting, marketing, distributing, wholesaling, supplying, selling, providing, servicing, repairing, and/or maintaining heavy equipment, including the Subject Trencher, throughout the United States including in Colorado.

30.     Defendant Home Depot is a manufacturer as defined in Colo. Rev. Stat. Ann. § 13-21-401, because it provided the subject product to the consumer with actual knowledge of a defect in a product. At all relevant times, Home Depot was in the business of testing, approving, fabricating, assembling, equipping, inspecting, labeling, advertising, promoting, marketing, distributing, wholesaling, supplying, selling, providing, renting, servicing, and maintaining heavy equipment, including the Subject Trencher, throughout the United States including in Colorado.

31.     At the time the Subject Trencher left the control of each of the Defendants, the Subject Trencher was defective in design and manufacture, lacked appropriate warnings and instructions, and was unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in the following subparagraphs:

# EXHIBIT A

a) The Subject Trencher was defective and unreasonably dangerous in its design and manufacture in that its digging chain control would fail over time, causing the digging chain control to stick and/or become stuck in the "on" position, even when the user releases the digging chain control.

b) The Subject Trencher was defective and unreasonably dangerous in its design in that it failed to include a properly sized and placed emergency stop button.

c) The Subject Trencher was defective and unreasonably dangerous in its design to the extent it was insufficiently researched, evaluated, and/or tested.

d) The Subject Trencher's design failed to incorporate other designs and technologies that could better protect consumers from foreseeable product failure.

e) The Subject Trencher lacked adequate and sufficient warnings, directions, and instructions about the risks, dangers, and harms presented by the Subject Trencher and reasonable means to reduce such risks, dangers and harms.

f) The Subject Trencher lacked post-sale warnings and/or recalls.

32. The Subject Trencher was expected by the Defendants to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

33. Plaintiff Stanley Townsend utilized the Subject Trencher in the manner in which the Defendants instructed the product be used, making such use reasonably foreseeable to the Defendants.

34. Stanley Townsend was a person who would reasonably be expected to use the Subject Trencher.

35. The defects in the Subject Trencher were a direct and proximate cause of the injuries to Stanley Townsend and his resulting damages.

36. The Defendants are strictly liable to Plaintiff Stanley Townsend for the injuries to Stanley Townsend caused by defects and inadequacies in the design, testing, manufacture, marketing, distribution, sale, and provision of the Subject Trencher, and liable to the Plaintiffs for resulting damages.

**WHEREFORE**, Plaintiffs pray for an award of damages against the Defendants, and each of them, to be fixed by the trier of fact in a reasonable amount, and for such other and further relief as the Court deems just and proper.

# EXHIBIT A

## SECOND CLAIM FOR RELIEF

### (*Negligence – Ditch Witch and Toro*)

37.     Plaintiffs incorporate all allegations made elsewhere in this Complaint as if set forth verbatim herein.

38.     At all relevant times, Ditch Witch and Toro were in the business of designing, engineering, developing, testing, approving, manufacturing, fabricating, assembling, equipping, inspecting, labeling, advertising, promoting, marketing, distributing, wholesaling, supplying, selling, providing, servicing, repairing and/or maintaining heavy equipment, including the Subject Trencher, throughout the United States including in Colorado.

39.     At all relevant times, Ditch Witch and Toro each had a duty to exercise reasonable care in designing, testing, manufacturing, marketing, distributing, selling, and servicing the Subject Trencher.

40.     At all relevant times, Ditch Witch and Toro each had a duty to design, test, manufacture, market, distribute, sell, and service the Subject Trencher to provide reasonable safety to its users.

41.     At all relevant times, Ditch Witch and Toro each had a duty to properly warn consumers of the risks, dangers, and harms presented by the Subject Trencher and reasonable means to reduce such risks, dangers and harms.

42.     At all relevant times, Ditch Witch and Toro each had a continual duty to consumers to inform them of problems being experienced with its trenchers, and to recall defective and unreasonably dangerous products.

43.     Ditch Witch and Toro negligently designed, engineered, developed, tested, approved, manufactured, fabricated, assembled, equipped, inspected, labeled, advertised, promoted, marketed, distributed, wholesaled, supplied, sold, provided, serviced, repaired, and/or maintained the Subject Trencher, in that they failed to exercise reasonable care to prevent the Subject Trencher from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner. Ditch Witch and Toro thereby breached their various duties set forth in this Count.

44.     Ditch Witch's and Toro's acts of negligence include but are not limited to the following:

# EXHIBIT A

a)   Ditch Witch and Toro negligently failed to design and manufacture the Subject Trencher in such a way and/or with such appropriate materials so as to prevent the digging chain control from sticking and/or becoming stuck in the "on" position, even when the user releases the digging chain control.

b)   Ditch Witch and Toro negligently failed to design the Subject Trencher to include a properly sized and placed emergency stop button.

c)   Ditch Witch and Toro negligently failed to conduct adequate research, evaluation, and testing of trenchers, including the Subject Trencher and similar trenchers, where such research, evaluation and testing would have revealed the propensity of the digging chain control to fail over time, causing the digging chain control to stick and/or become stuck in the "on" position, even when the user releases the digging chain control.

d)   Ditch Witch and Toro negligently failed to incorporate other designs and technologies into the Subject Trencher that could have better protected consumers from foreseeable product failure and resulting injuries.

e)   Ditch Witch and Toro negligently failed to properly maintain, test, service, and/or repair the Subject Trencher.

f)   Ditch Witch and Toro negligently failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Trencher and reasonable means to reduce such risks, dangers and harms.

g)   Ditch Witch and Toro failed to properly recall, retrofit, and/or warn consumers about the defects in and/or the danger of the Subject Trencher at any time post-sale.

The factual basis for Ditch Witch's and Toro's negligence is also further specified in the First Claim for Relief.

45.   At the time of the design and manufacture of the Subject Trencher, Ditch Witch and Toro knew, or in the exercise of reasonable care should have known, that the Subject Trencher was defective and unreasonably harmful to consumers when used in a reasonably foreseeable manner.

46.   The Subject Trencher had potential risks that were known or knowable to Ditch Witch and Toro by the use of scientific knowledge available before, at, and after the time of design, manufacture, distribution, marketing, and sale of the product.  Ditch Witch and Toro knew, or in

# EXHIBIT A

the exercise of reasonable care should have known, of the defective condition, characteristics, and risks associated with said product, as set forth herein.

47. At the time of the design and manufacture of the Subject Trencher, Ditch Witch and Toro knew, or in the exercise of reasonable care should have known, the dangers the product would pose if the digging chain control become stuck in the "on" position when the user released the digging chain control, and of design characteristics, service, repairs, and/or maintenance necessary to assure it was safe. Ditch Witch and Toro nonetheless failed to exercise ordinary care to design, test, manufacture, market, distribute, sell, service, repair, and/or maintain the Subject Trencher.

48. At the time of the design and manufacture of the Subject Trencher, Ditch Witch and Toro knew, or in the exercise of reasonable care should have known, of alternative designs that were technologically and economically feasible and that would better protect consumers, but Ditch Witch and Toro choose not to incorporate these alternative designs.

49. The Subject Trencher that was designed, manufactured, marketed, distributed, and sold by Ditch Witch and Toro was in a defective condition that was unreasonably dangerous to any user or ordinary consumer of the machine, such as Plaintiff Stanley Townsend. Such ordinary consumers, including Plaintiff Stanley Townsend, would not and could not have recognized or discovered the potential risks of the Subject Trencher as set forth herein.

50. Ditch Witch's and Toro's knowledge as described in this Complaint is believed to be reflected in internal communications, including memoranda and e-mail, reports of other incidents involving Ditch Witch and/or Toro products, compilations and analysis of machine failure data, the results of tests conducted by Ditch Witch and/or Toro and others, and the results of other studies and analysis conducted by Ditch Witch and/or Toro and others.

51. Ditch Witch and Toro breached the duties set forth herein, including but not limited to their duty to design, test, manufacture, market, distribute, sell and service the Subject Trencher to provide reasonable protection to consumers utilizing such product.

52. Ditch Witch's and Toro's negligent acts and omissions were a direct and proximate cause of the injuries to Stanley Townsend and of Plaintiffs' resulting damages.

**WHEREFORE**, Plaintiffs pray for an award of damages against Ditch Witch and Toro to be fixed by the trier of fact in a reasonable amount, and for such other and further relief as the Court deems just and proper.

# EXHIBIT A

## THIRD CLAIM FOR RELIEF

### (*Negligence – Home Depot*)

53.     Plaintiffs incorporate all allegations made elsewhere in this Complaint as if set forth verbatim herein.

54.     At all relevant times, Home Depot was in the business of testing, approving, fabricating, assembling, equipping, inspecting, labeling, advertising, promoting, marketing, distributing, wholesaling, supplying, selling, providing, renting, servicing, repairing and/or maintaining heavy equipment, including the Subject Trencher, throughout the United States including in Colorado.

55.     At all relevant times, Home Depot had a duty to exercise reasonable care in testing, approving, fabricating, assembling, equipping, inspecting, labeling, advertising, promoting, marketing, distributing, wholesaling, supplying, selling, providing, renting, servicing, repairing and maintaining the Subject Trencher.

56.     At all relevant times, Home Depot had a duty to ensure the Subject Trencher it was renting and/or providing to Plaintiff Stanley Townsend, and to the public at large, was reasonably safe.

57.     At all relevant times, Home Depot had a duty to properly warn consumers of the risks, dangers, and harms presented by the Subject Trencher and reasonable means to reduce such risks, dangers and harms.

58.     At all relevant times, Home Depot had a continual duty to consumers to inform them of problems being experienced with the Subject Trencher, and to stop renting and/or providing the Subject Trencher and other identical or substantial similar defective and unreasonably dangerous products to consumers.

59.     Home Depot negligently tested, approved, manufactured, fabricated, assembled, equipped, inspected, labeled, advertised, promoted, marketed, distributed, wholesaled, supplied, sold, provided, rented, serviced, repaired, and/or maintained the Subject Trencher, in that it failed to exercise reasonable care to prevent the Subject Trencher from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner. Home Depot thereby breached its various duties set forth in this Count.

60.     Home Depot's acts of negligence include but are not limited to the following:

# EXHIBIT A

a)      Home Depot negligently failed to properly maintain, test, service, and/or repair the Subject Trencher.

b)      Home Depot negligently failed to ensure that the Subject Trencher it was renting and/or providing to consumers was safe for use.

c)      Home Depot negligently failed to inspect the Subject Trencher for safety issues prior to renting the Subject Trencher to Plaintiff Stanley Townsend, and negligently failed to repair the Subject Trencher and/or remove it from service.

d)      Home Depot negligently rented the Subject Trencher to Plaintiff Stanley Townsend without conducting appropriate check-in and/or check-out procedures on the Subject Trencher.

e)      Home Depot negligently rented the Subject Trencher to Plaintiff Stanley Townsend knowing that the Subject Trencher's digging chain control had been previously sticking and/or malfunctioning.

f)      Home Depot negligently failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Subject Trencher and reasonable means to reduce such risks, dangers and harms.

g)      Given its knowledge that the Subject Trencher's digging chain control had been previously sticking and/or malfunctioning, Home Depot negligently failed to ensure the Subject Trencher it was renting and/or providing was designed and manufactured in such a way and/or with such appropriate materials so as to prevent the digging chain control from sticking and/or becoming stuck in the "on" position, even when the user releases the digging chain control.

h)      Given its knowledge that the Subject Trencher's digging chain control had been sticking and/or malfunctioning, Home Depot negligently failed ensure the Subject Trencher it was renting and/or providing included a properly sized and placed emergency stop button.

The factual basis for Home Depot's negligence is also further specified in the First Claim for Relief.

61.     At the time of rental of the Subject Trencher to Plaintiff Stanley Townsend, Home Depot knew, or in the exercise of reasonable care should have known, that the Subject Trencher

# EXHIBIT A

was defective and unreasonably dangerous to consumers when used in a reasonably foreseeable manner.

62.     The Subject Trencher had potential risks that were known or knowable to Home Depot by the use of knowledge available before and/or at the time of rental to Plaintiff Stanley Townsend and others. Home Depot knew, or in the exercise of reasonable care should have known, of the defective condition, characteristics, and risks associated with said product, as set forth herein.

63.     At the time of rental of the Subject Trencher to Plaintiff Stanley Townsend, Home Depot knew, or in the exercise of reasonable care should have known, the dangers the product would pose if the digging chain control become stuck in the "on" position when the user released the digging chain control, and of design characteristics, service, repairs, and/or maintenance that were necessary to assure it was safe. Home Depot nonetheless failed to exercise ordinary care to inspect, test, service, repair, and/or maintain the Subject Trencher and/or remove it from service.

64.     The Subject Trencher was in a defective condition that was unreasonably dangerous to any user or ordinary consumer of the machine, such as Plaintiff Stanley Townsend. Such ordinary consumers, including Plaintiff Stanley Townsend, would not and could not have recognized or discovered the potential risks of the Subject Trencher as set forth herein.

65.     Home Depot's knowledge as described in this Complaint is believed to be reflected in internal communications, including memoranda and e-mail, reports of other incidents involving similar products, compilations and analysis of device failure data, the results of tests conducted by Ditch Witch, Toro and others, and the results of other studies and analysis conducted by Home Depot, Ditch Witch, Toro and/or others.

66.     Home Depot breached the duties set forth herein, including but not limited to its duty to test, market, distribute, inspect, label, rent, sell, service, repair, and maintain the Subject Trencher to provide reasonable protection to consumers renting that product.

67.     Home Depot's negligent acts and omissions were a direct and proximate cause of the injuries to Stanley Townsend and of Plaintiffs' resulting damages.

**WHEREFORE**, Plaintiffs pray for an award of damages against Home Depot to be fixed by the trier of fact in a reasonable amount, and for such other and further relief as the Court deems just and proper.

# EXHIBIT A

## FOURTH CLAIM FOR RELIEF

### (Breach of Warranties – *All Defendants*)

68.    Plaintiffs incorporate all allegations made elsewhere in this Complaint as if set forth verbatim herein.

69.    Plaintiffs' breach of warranty claims are asserted pursuant to C.R.S 4-2-313 (express warranties), C.R.S. 4-2-315 (implied warranty, merchantability), and C.R.S 4-2-315 (implied warranty, fitness for particular purpose).

70.    Upon information and belief, warranties of future performance, express warranties, an implied warranty of merchantability, and/or an implied warranty of fitness existed with respect to the Subject Trencher.

71.    Defendants Ditch Witch, Toro, and Home Depot knew or had reason to know the particular purposes for which the Subject Trencher was required and was to be used, and that purchasers and users, such as Stanley Townsend, would rely on Ditch Witch's, Toro's, and/or Home Depot's skill or judgment in designing, testing, manufacturing, marketing, distributing, selling, and providing goods suitable for such purposes and uses.

72.    The Subject Trencher was not fit for the particular purposes for which it was intended, and for which it was used, nor was it of merchantable quality at the time it was offered for sale and rent.

73.    At the time the Subject Trencher was designed, manufactured, marketed, distributed, sold, and provided to consumers for use, Ditch Witch, Toro, and Home Depot knew or reasonably should have known that it was not reasonably safe for the uses intended.

74.    At the time the Subject Trencher was designed, manufactured, marketed, distributed, sold, and provided to consumers for use, Ditch Witch, Toro, and Home Depot knew or reasonably should have known that it posed unreasonable risks of injury to consumers for the reasons set forth in the previous Claims for Relief.

75.    The Subject Trencher did not conform to the warranties, affirmations, and representations made by Ditch Witch, Toro, Home Depot and/or their respective representatives.

76.    Plaintiffs relied to their detriment on Ditch Witch's, Toro's, Home Depot's and their representatives' express and/or implied warranties, including but not limited to warranties of future performance.

# EXHIBIT A

77.     Plaintiffs were third-party beneficiaries of express and/or implied warranties, including but not limited to warranties of future performance made by Ditch Witch, Toro, Home Depot, and/or their representatives to others.

78.     Ditch Witch's, Toro's, and/or Home Depot's breach of express and implied warranties, including but not limited to warranties of future performance, was a direct and proximate cause of the injuries to Stanley Townsend and Plaintiffs resulting damages.

79.     Plaintiffs hereby specifically plead and provide notice to Ditch Witch, Toro, and Home Depot with respect to the said breach of warranties in accord with C.R.S. 4-2-607(3).

80.     Ditch Witch, Toro, and Home Depot are liable for Stanley Townsend's injuries and Plaintiffs' resulting damages caused by their breach of warranties

**WHEREFORE**, Plaintiffs pray for an award of damages against all Defendants, and each of them, to be fixed by the trier of fact in a reasonable amount, and for such other and further relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### (Violation of the Colorado Consumer Protection Act – *All Defendants*)

81.     Plaintiffs incorporate all allegations made elsewhere in this Complaint as if set forth verbatim herein.

82.     At all relevant times, Ditch Witch, Toro, and Home Depot were doing business in the State of Colorado and offering their products for sale and/or rent to all Colorado residents.

83.     In the course of their businesses, Ditch Witch, Toro, and Home Depot, and/or their respective representatives, engaged in deceptive trade practices and/or caused another to engage in deceptive trade practices by knowingly making false representation(s) about the characteristics, uses, benefits and qualities of the Subject Trencher, including but not limited to making representations that such product was safe and non-defective.  Such claims were made despite knowing and/or having reason to know these representations were false when made.  Accordingly, Ditch Witch, Toro, and Home Depot violated C.R.S. 6-1-105(1)(e).

84.     In the course of their businesses, Ditch Witch, Toro, and Home Depot, and/or their respective representatives, made false representations to the effect that their trencher products were of a particular standard and quality, including but not limited to being safe and non-defective, at a

# EXHIBIT A

time when the Defendants knew these representations were false. In particular, in marketing, distributing, selling, and renting the Subject Trencher, Ditch Witch, Toro, and Home Depot, and/or their respective representatives, failed to disclose material information relating to the safety of the Subject Trencher that was known at the time they advertised, sold, and rented them, including but not limited to the dangerous nature of Trencher and its digging chain control, and thereby intended to induce consumers to purchase and rent products they otherwise would not have purchased or used had this information been disclosed. Such information included failure to warn of the Subject Trencher's defects (as set forth in the previous Claims for Relief and incorporated herein) and failure to provide consumers with information regarding how the Trencher and its digging chain control would perform, what safety alternatives existed but were not provided, and the consequences of failing to provide such safer alternatives. Accordingly, Ditch Witch, Toro, and Home Depot violated C.R.S. 6-1-105(1)(g).

85. In the course of their businesses, Ditch Witch, Toro, and Home Depot, and/or their respective representatives, advertised their product with intent not to sell and/or rent them as advertised. These Defendants engaged in such practices by advertising safe and effective products but providing defective and unsafe products. They did so by advertising in such a way as would cause a reasonable person of ordinary intelligence to understand and reasonably expect that they would receive safe products if they purchased and/or used the Subject Trencher and/or other similar products. However, the Subject Trencher was defective (as set forth elsewhere in this Complaint and incorporated herein), so the Subject Trencher was different from that advertised. Accordingly, Ditch Witch, Toro, and Home Depot violated C.R.S. 6-1-105(1)(i).

86. In the course of their businesses, Ditch Witch, Toro, and Home Depot, and/or their respective representatives failed to disclose material information relating to the safety of the Subject Trencher, including but not limited to the fact that the Trencher and its digging chain control were dangerous, and could likely result in serious injuries when the digging chain failed to stop when intended by the user. Advertising and sale of these products tended to deceive and mislead consumers into believing that such products were safe and fit for their intended uses, including but not limited to being adequately safe for use in ordinary and regular yard trenching activities. Accordingly, Ditch Witch, Toro, and Home Depot violated C.R.S. 6-1-105(1)(u).

87. Upon information and belief, Ditch Witch, Toro, and Home Depot knew the representations set forth herein were false when made based upon information they knew or had

# EXHIBIT A

reason to know, which was likely contained in internal communications, including memoranda and email, reports of other incidents involving the same or similar Trencher products, in compilations and analysis of device failure data, and in the results of tests, studies, and analysis conducted by the Defendants and others.

88.     Upon information and belief, other persons were also induced to purchase and use Ditch Witch, Toro, and Home Depot Trencher devices that were the same or similar to the Subject Trencher.  These products contain design defects, so all such individuals would have also received defective and unreasonably dangerous products that were different from the safe and non-defective products and services advertised.

89.     Upon information and belief, before and after the sale, rental, and use of the Subject Trencher, thousands of other consumers were exposed to the type of advertising that Plaintiff Stanley Townsend was exposed to. Ditch Witch, Toro, and Home Depot knew such individuals would reasonably rely on such advertising.  Ditch Witch, Toro, and Home Depot, and their respective representatives, made similar false statements to those consumers knowing they would be relied upon by them, and such individuals were likewise induced by such advertising to purchase, rent, and/or use products like the Subject Trencher. All such other people who purchased, rented, and/or used the Defendants' similar products were harmed in that they were receiving defective and unreasonably dangerous equipment. Thus, in engaging in the said deceptive trade practices as to the Plaintiff Stanley Townsend and others, Ditch Witch, Toro, and Home Depot engaged in practices that significantly impacted the public as actual or potential consumers of the Defendants' goods and services.

90.     The activities described in this Count, and described elsewhere in this Complaint, were undertaken in the course of Ditch Witch's, Toro's, and Home Depot's businesses.

91.     Such representations and activities took place in the State of Colorado.

92.     Plaintiff Stanley Townsend was an actual and potential user and consumer of the Defendants' goods and services.

93.     As a result of Ditch Witch's, Toro's, and Home Depot's deceptive trade practices, Plaintiff Stanley Townsend, as a potential and actual consumer of the Defendants' goods and services, rented and utilized a product that was unsafe and unreasonably dangerous, and was injured by such product as set forth elsewhere in this Complaint and incorporated herein. Accordingly, Plaintiffs sustained an injury to legally protected interests.

# EXHIBIT A

94.     Ditch Witch's, Toro's, and Home Depot's deceptive trade practices were a direct and proximate cause of the injuries to Stanley Townsend and Plaintiffs' resulting damages.

95.     The actions described in this Count constitute deceptive trade practices pursuant to Colorado Revised Statutes § 6-1-105. Pursuant to Colorado Revised Statutes § 6-1-113, Plaintiffs are entitled to treble damages, costs, and attorney fees.

**WHEREFORE**, Plaintiffs pray for an award of damages against all Defendants to be fixed by the trier of fact in a reasonable amount, and for such other and further relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### (Loss of Consortium – *All Defendants*)

96.     Plaintiffs incorporate all allegations made elsewhere in this Complaint as if set forth verbatim herein.

97.     At all times material hereto, Plaintiff Stanley Townsend was and is the husband of Plaintiff Tamara Townsend.

98.     As a direct and proximate result of the injuries and damages suffered by Plaintiff Stanley Townsend, Plaintiff Tamara Townsend has been deprived of a substantial extent of her husband's care, society, affection and physical assistance in the operation and maintenance of their home.

99.     Plaintiff Tamara Townsend has incurred expenses and losses in relation to her husband's injuries and extensive medical care, and has incurred lost wages and other economic loss as a result of having to resign from her prior employment to take care of her husband and their family, including their grandson.  As a result, Plaintiff Tamara Townsend has suffered a loss of marital consortium.

**WHEREFORE**, Plaintiffs prays for an award of damages against all Defendants to be fixed by the trier of fact in a reasonable amount, and for such other and further relief as the Court deems just and proper.

## DAMAGES

100.     Plaintiffs incorporate all allegations made elsewhere in this Complaint as if set forth verbatim herein.

# EXHIBIT A

101.    As a direct and proximate result of the defective and unreasonably dangerous Subject Trencher and Defendants' acts and omissions set forth herein, Plaintiffs have incurred and seek the following general and special damages, without limitation:

a)    Past and future reasonable medical, hospital and rehabilitation care and services, nursing care and services, life care and attendant services, medication, therapy and other expenses, including special medical damages;

b)    Past and future lost earnings and income, impairment of earning capacity, and other economic damages;

c)    Past and future loss of household services and other economic damages;

d)    Past and future physical and mental pain and suffering, emotional stress, and extreme mental anguish;

e)    Past and future inconvenience;

f)    Loss of enjoyment of life, and impairment and loss of the quality and value of life;

g)    Loss of consortium damages;

h)    Temporary and permanent physical impairment;

i)    Temporary and permanent disfigurement;

j)    Attorney's fees, treble damages, costs, and other remedies available under the Colorado Consumer Protection Act; and

k)    All such other relief and compensatory damages as are permissible at common law and by statute, and to which Plaintiffs are entitled.

**WHEREFORE**, Plaintiffs pray for Judgment against the Defendants, and each of them, in an amount to be determined at trial and for the costs of this suit, pre-judgment and post-judgement interest, costs and expert witness fees, and for such other and further relief as the Court may deem proper.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 15th day of February 2022.

Respectfully submitted,

# EXHIBIT A

**JORDAN HERINGTON & ROWLEY**

*s/ Anne Dieruf*
Jason W. Jordan
Anne M. Dieruf

**Law Office of Jonathan M. Ward**

*s/ Jonathan Ward*
Jonathan M. Ward
Dan Yarbro

*Attorneys for Plaintiff*

**Plaintiffs' Address**
565 E. County Road 15
Monte Vista, CO 81144